# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF INDIANA



| | |
|---|---|
| ROSE ACRE FARMS, INC., an Indiana corporation, | ) Case No. |
| | ) |
| Plaintiff, | ) **COMPLAINT FOR DECLARATORY** |
| | ) **JUDGMENT** |
| vs. | ) |
| | ) |
| COLUMBIA CASUALTY COMPANY, an Illinois corporation; THE NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, a Connecticut corporation, | ) |
| | ) |
| Defendants. | ) |
| | ) |

4:09-cv-0025 SEB-WGH

**COMPLAINT**

This is an insurance coverage suit seeking to establish that: (1) Defendants Columbia Casualty Company ("Columbia Casualty") and The National Fire Insurance Company of Hartford ("National Fire") (collectively "Defendants") had and have a duty to defend Plaintiff Rose Acre Farms, Inc. ("Rose Acre") in the underlying litigation styled as *In re: Processed Egg Products Antitrust Litigation*, MDL No. 2002, 08-md-02002, U.S.D.C. for the Eastern District of Pennsylvania (the "*Egg Products Antitrust Litigation*"); and (2) the Defendants must reimburse Rose Acre for all the defense expenses it incurred in that action.

## THE PARTIES

1.      Plaintiff Rose Acre Farms, Inc. is a corporation organized under the laws of the State of Indiana. Its principal executive offices and place of business are located in Seymour, Indiana.

2.      Defendant Columbia Casualty Company is, and at all times mentioned herein was, an insurance company organized and existing under the laws of the State of Illinois with its principal place of business in Chicago, Illinois and admitted to transact insurance business in the State of Indiana.

3.      Defendant The National Fire Insurance Company of Hartford is, and at all times mentioned herein was, an insurance company organized and existing under the laws of the State of Connecticut with its principal place of business in Chicago, Illinois and admitted to transact insurance business in the State of Indiana.

4.      Both Defendants are CNA companies.

## JURISDICTION

5.      This is an action for declaratory relief pursuant to 28 U.S.C. § 2207. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that complete diversity exists between the parties. Plaintiff is a citizen of Indiana. Defendant Columbia Casualty is a citizen of Illinois. Defendant National Fire is a citizen of Illinois and Connecticut.

6.      The amount in controversy exceeds the sum of $75,000 exclusive of interest and costs, and in addition to other and further relief, declaratory relief is sought.

1                                    **COMPLAINT**

## VENUE AND APPLICABLE LAW

7.     Venue is proper in the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1391(a)(c) in that Rose Acre's principal place of business is in Seymour, Indiana, where Rose Acre's principal executive offices are located.

8.     Defendants are insurance companies actively selling insurance policies in Indiana and, on information and belief, are licensed to sell insurance by the Indiana Department of Insurance.  Defendants would have sufficient contacts with the Southern District of Indiana to be subject to personal jurisdiction in this District.

9.     Venue is proper in this District because a substantial part of the events or omissions giving rise to the claims alleged herein occurred in this District.  This Complaint centers on the liability insurance contracts issued to Rose Acre (the "Policies") that were formed in the Southern District of Indiana, where the Defendants actively sell insurance policies and where Rose Acre, which has maintained its principal place of business in Seymour, Indiana, received the pertinent Policies.

10.     The Policies were intended to cover Rose Acre's operations throughout the United States, including Indiana.

11.     The substantive rights of the parties are governed by the law of Indiana because the contracts at issue in this case were executed in Indiana, there is no evidence that the parties did not intend to contract pursuant to the laws of the state of Indiana, and the policies and interest of Indiana would be most seriously impaired if its laws were not applied.

## THE INSURANCE POLICIES

12.     Transcontinental Insurance Company ("Transcontinental"), a CNA company, issued commercial general liability insurance policy no. 157341892 to Rose Acre Farms, Inc., the named insured, effective March 1, 1999 through March 1, 2000.[1]  A copy of the relevant parts of the policy is attached as **Exhibit "1."**

---

[1]Defendant National Fire is Transcontinental's successor.  It assumed Transcontinental's obligations under the policy.

COMPLAINT

13.     Defendant Columbia Casualty, also a CNA company, renewed the policy on the same terms and conditions under policy no. 0157341892, effective March 1, 2000 through March 1, 2001, again issuing the policy to named insured Rose Acre Farms, Inc.  A copy of the relevant parts of the 2000/2001 policy is attached as **Exhibit "2."**

14.     These insurance policies are collectively referred to as the "Policies."  The Policies each include the same Commercial General Liability Coverage Form, i.e., CG 00 01 07 98.

15.     The Policies were negotiated and issued to Rose Acre at its Seymour, Indiana office. (**Exhibits "1" and "2"** (Commercial General Liability Coverage Part Declarations), p. 1)

16.     The Policies each have a limit of $1 million for "personal and advertising injury" and a $2 million general aggregate limit.  (**Exhibits "1" and "2"** (Commercial General Liability Coverage Part Declarations), p. 1)

17.     The Policies each provide in pertinent part the following "personal and advertising injury" coverage and defense provision:

> **SECTION 1 – COVERAGES**
> . . . .
> **COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> **1.     Insuring Agreement**
>
>    **a.**     We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.
>    . . . .
>    **b.**     This insurance applies to "personal and advertising injury" arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

(**Exhibits "1" and "2"** (Commercial General Liability Coverage Form), pp. 4-5 of 13)

18.     The Policies each include the following pertinent definitions:

> **SECTION V – DEFINITIONS**
>
> 1.     "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting

COMPLAINT

customers or supporters.

. . . .

14. "Personal and advertising injury" means injury . . . arising out of one or more of the following offenses:

. . . .

f. The use of another's advertising idea in your "advertisement" . . . .

(**Exhibits "1"** and **"2"** (Commercial General Liability Coverage Form), pp. 10 and 12 of 13)

19. The term "advertising idea" is not defined in the Policies. (**Exhibits "1"** and **"2"** (Commercial General Liability Coverage Form Definitions), pp. 10-13 of 13.)

## DEFENDANT NATIONAL FIRE ASSUMED TRANSCONTINENTAL'S OBLIGATIONS UNDER THE 1999/2000 POLICY

20. As of December 31, 2007, Transcontinental merged into its direct parent company, National Fire. As Transcontinental's successor by merger, National Fire assumed its obligations under Rose Acre's 1999/2000 Policy. A copy of the relevant part of CNA's September 2007 SEC filing Form 10-Q (SEC Accession No. 0000950137-07-016219) declaring such merger is attached as **Exhibit "3."**

21. Alternatively, Rose Acre alleges on information and belief that as of December 31, 2007 Transcontinental was subsumed by National Fire effecting a de facto merger. As successor in interest, National Fire succeeded to the existing rights and obligations of Transcontinental at the time of the merger and is consequently liable under Rose Acre's 1999/2000 Policy. A copy of the Washington State Insurance Commissioner's 2007 Annual Report Appendix G is attached as **Exhibit "4."**

22. On information and belief, National Fire is a wholly-owned indirect subsidiary of CNA Financial Corporation.

23. On information and belief, prior to dissolution Transcontinental was a member of an insurance holding company system of which Loews Corporation was the ultimate controlling authority, holding approximately 87% of the voting stock of CNA.

24. On information and belief, CNA owns 100% of National Fire's issued and outstanding stock.

25.     On information and belief, assets held by Transcontinental prior to December 31, 2007, and assets currently owned by National Fire are solely under the control of the Board of Directors of CNA.

26.     On information and belief, Transcontinental ceased operations on or about December 31, 2007, and no longer exists as a CNA entity or otherwise.  Effective as of that date National Fire assumed all rights, powers, obligations, and liabilities as a mere continuation of Transcontinental.

### THE UNDERLYING *EGG PRODUCTS ANTITRUST LITIGATION*

27.     Beginning in late 2008, many different plaintiffs started filing class action lawsuits against Rose Acre and other defendants alleging they violated antitrust laws by engaging in a price fixing conspiracy to raise the price of eggs, which allegedly damaged the plaintiffs as purchasers of eggs and egg products.

28.     A total of 22 class action complaints making these allegations have been filed to date.

29.     Seventeen of the complaints name Rose Acre (and others) as defendants, including 13 complaints initially filed in the Eastern District of Pennsylvania, three initially filed in the District of Minnesota, and one initially filed in the District of New Jersey as follows:

> (1)     *T.K. Ribbing's Family Restaurant v. United Egg Producers, et al.*, United States District Court, Eastern District of Pennsylvania, No. 08-4653.
>
> (2)     *Bemus Point Inn, Inc. v. United Egg Producers, Inc., et al.*, United States District Court, Eastern District of Pennsylvania, No. 08-4750.
>
> (3)     *Nussbaum-SF, Inc. v. United Egg Producers, Inc., et al.*, United States District Court, Eastern District of Pennsylvania, No. 08-4819.
>
> (4)     *The Egg Store, Inc. v. United Egg Producers, Inc., et al.*, United States District Court, Eastern District of Pennsylvania, No. 08-4880.
>
> (5)     *Country Foods v. Hillandale Farms of PA, Inc., et al.*, United States District Court, Eastern District of Pennsylvania, No. 08-5078.

COMPLAINT

(6)   *Eby-Brown Company LLC v. United Egg Producers, Inc., et al.*, United States District Court, Eastern District of Pennsylvania, No. 08-5167.

(7)   *Eggology, Inc. v. United Egg Producers, Inc., et al.*, United States District Court, Eastern District of Pennsylvania, No. 08-5168.

(8)   *Goldberg and Solovy Foods, Inc. v. United Egg Producers, Inc., et al.*, United States District Court, Eastern District of Pennsylvania, No. 08-5166.

(9)   *John A. Lisciandro d/b/a Lisciandro's Restaurant v. United Egg Producers, et al.*, United States District Court, Eastern District of Pennsylvania, No. 08-5202.

(10)  *Wixon Inc. v. United Egg Producers Inc., et al.*, United States District Court, Eastern District of Pennsylvania, No. 08-5368.

(11)  *Williams, et al. v. United Egg Producers Inc., et al.*, United States District Court, Eastern District of Pennsylvania, No. 08-5431.

(12)  *Pilar M. De Castro & Co., Inc., et al. v. Cal-Maine Foods, Inc., et al.*, United States District Court, Eastern District of Pennsylvania, No. 09-0101.

(13)  *Brigiotta's Farmland Produce and Garden Center, Inc. v. United Egg Producers, Inc., et al.*[2], United States District Court, Eastern District of Pennsylvania, No. 08-4967.

(14)  *Sensoryeffects Flavor Co. v. United Egg Producers, Inc. et al.*, United States District Court, District of Minnesota, No. 08-5970.

(15)  *Sicilian Chefs, Inc. v. Michael Foods, Inc. et al.*, United States District Court, District of Minnesota, No. 08-6036.

(16)  *Adam Properties Inc. v. Michael Foods, Inc., et al.*, United States District Court, District of Minnesota, No. 08-6030.

(17)  *Oasis Foods Company v. Michael Foods inc., et al.*, United States District Court, District of New Jersey, No. 08-5104.

---

[2]This case was voluntarily dismissed on May 18, 2009.

COMPLAINT

30.     The fact allegations in all 17 of these complaints are substantially alike.  The main difference is that some of the complaints were filed by plaintiffs who purchased eggs and egg products *directly* from Rose Acre and the other defendants, such as retailers.  And the rest of the complaints were filed by plaintiffs who *indirectly* purchased eggs and egg products from Rose Acre and the other defendants.  Additionally, the "indirect purchaser" complaints included both state and federal antitrust causes of action but the "direct purchaser" complaints only federal antitrust causes of action.

31.     A representative copy of one of these 17 complaints, *John A. Lisciandro d/b/a Lisciandro's Restaurant v. United Egg Producers, et al.*, U.S.D.C., E.D. Pennsylvania, No. 08-5202, is attached as an example as **Exhibit "5."**  That complaint includes the following allegations:

> 1. This action is brought as a class action...on behalf of the plaintiff class consisting of all persons and entities who purchased "shell eggs" or "egg products" produced from caged birds...directly from any of the defendants or any of their co-conspirators during the period from January 1, 2000, through the present (the "Class Period").
>
> ...
>
> 37. Throughout the relevant period, Defendants have affirmatively concealed from Plaintiff and class members the unlawful combination, conspiracy and agreement among Defendants alleged herein...**Defendants...falsely represented to Plaintiff and class member that the prices they paid for eggs were fair and competitive.**
>
> ...
>
> 96. UEP is the largest egg trade organization in the United States.
>
> ...
>
> #### 4. UEP's Animal Husbandry Guidelines Are Pretext For a Naked Price-Fixing Scheme
>
> 200. The UEP and co-conspirators' supply control campaign starts with the fee-based "UEP Certified" logo and misleadingly termed "animal husbandry guidelines." UEP created the UEP Certified program as a front and pretext for a naked price fixing agreement and an anticompetitive output restriction scheme....
>
> ...
>
> 202. **UEP Certified companies [like Rose Acre]** are permitted to **display the UEP Certified logo on their packaging and** to **market their eggs** as "United Egg Producers Certified." . . . All UEP Certified eggs must also be **marketed with the phrase "Produced in Compliance with the United Egg Producers' Animal Husbandry Guidelines."**

**COMPLAINT**

**(Exhibit "5" ¶¶ 1, 37, 96, 200, 202 (emphasis added))**

32.     All 22 complaints were transferred or ordered related by the Judicial Panel on Multi-District Litigation to the United States District Court for the Eastern District of Pennsylvania for pre-trial administration.  They are now pending as the collectively captioned *In re: Processed Egg Products Antitrust Litigation,* MDL No. 2002, 08-md-02002, United States District Court for the Eastern District of Pennsylvania (the "*Egg Products Antitrust Litigation*"). Attached as **Exhibit "6"** is a joint status report in the *Egg Products Antitrust Litigation* dated May 4, 2009.  There is a schedule of these 22 class actions attached at the end of the status report.

33.     On January 30, 2009, the underlying direct purchaser class plaintiffs filed a Consolidated Amended Class Action Complaint in the *Egg Products Antitrust Litigation* against Rose Acre and the other defendants.  It is the operative complaint for direct purchasers, replacing the initially filed direct purchaser complaints.   A copy of the operative direct purchaser complaint is attached as **Exhibit "7."**  It alleges a single cause of action for Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

34.     The direct purchaser Consolidated Amended Class Action Complaint in the *Egg Products Antitrust Litigation* includes the following allegations:

### NATURE OF THE CASE

1.  For nearly a decade, Defendants have engaged in a contract, combination and conspiracy to fix, raise, maintain, and stabilize the prices at which shell eggs and egg products were sold in the United States.  The aim of Defendants' conspiracy was to conduct a supply control campaign through various means designed to reduce output and artificially fix and/or inflate the price of eggs in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1. Because of Defendants' unlawful conduct, Plaintiffs and similarly situated direct purchasers of shell eggs and egg products (collectively referred to herein as "eggs") were injured and paid artificially inflated prices that were more than they would have paid in a competitive market.

2.  This is a class action brought by Plaintiffs on behalf of two Subclasses; entities who purchased shell eggs directly from one or more of the Defendants during the Class Period; and entities who purchased egg products directly from one or more Defendants during the Class Period.  Defendants include (a) trade groups that

COMPLAINT

coordinated and facilitated the unlawful conspiracy; and (b) vertically integrated producers of shell eggs or egg products or both.

. . . .

5.  Defendants combined and conspired to collectively reduce the supply of shell eggs available for sale in the United States during a time of relatively steady and/or increased demand, which allowed Defendants to supracompetitively increase the price of shell eggs and egg products from 2000 to record highs by 2007 and to the present more than they otherwise could have in a competitive market. . . .

. . . .

## DEFENDANTS

. . . .

24.  . . . Defendant United Egg Producers, Inc. ("UEP") is a cooperative corporation organized, existing, and doing business under the laws of the State of Maine with its office and principal place of business in Alpharetta, Georgia.

. . . .

### Rose Acre Farms

43.  Defendant Rose Acre Farms, Inc. ("Rose Acre") is a corporation organized, existing, and doing business under the laws of the State of Indiana, with its offices and principal place of business located in Seymour, Indiana.  During the Class Period, Rose Acre sold eggs and egg products to purchasers in the United States, including members of the Class.

. . . .

45.  Rose Acre is a vertically integrated operation handling all of its own breeding chicks, milling feed, harvesting, cleaning, sorting, packing, and shipping eggs and egg products directly to retailers.

. . . .

47.  Rose Acre is a member of UEP . . . . Rose Acre has agreed to the conspiracy of selling UEP certified eggs and has reduced its egg supply as a result. . . .

. . . .

## CLASS ACTION ALLEGATIONS

91.  Plaintiffs bring this action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following Plaintiff Class and Subclasses:

> All individuals and entities that purchased eggs, including shell eggs and egg products, produced from caged birds in the United States directly from Defendants during the Class Period from January 1, 2000 through the present.

. . . .

## CONCEALMENT AND TOLLING

. . . .

**109. Price increases for shell eggs and egg products . . . during the Class Period . . . were publicly reported in . . . press releases, news wire services, trade publications, and newspapers. . . .**

**COMPLAINT**

**110. Throughout the relevant period . . . Defendants . . . falsely represented to Plaintiffs and Class members that the prices they paid for eggs were fair and competitive.**

. . . .

**113. Publicly, many Defendants and co-conspirators blamed high egg prices on circumstances beyond their control,** while only privately acknowledging and celebrating coordinated industry efforts to reduce egg supplies.

**114. Defendants falsely represented to Plaintiffs and the members of the Class that the UEP certified program, one of the key elements of Defendants' conspiracy to reduce egg supply and fix prices, was implemented as a result of animal husbandry concerns. . . .** In fact, however, Defendants' primary motivation was to develop a viable and enforceable method of reducing egg output through reducing hen supply.

. . . .

**178. . . . [M]any egg producers have pretextually blamed high egg prices on rising fuel or feed costs . . . .**

. . . .

184. UEP is the largest egg trade organization in the United States. [fn. 38: United Egg Producers, About United Egg, History & Background, http://www.unitedegg.org/ about_history.aspx]

. . . .

186. . . . UEP was formed in 1968 after a group of egg producers got together to discuss the "disastrous price cycles of the egg industry."

. . . .

213. . . . UEP listed the following Defendants as "Certified Companies and Licensed Marketers" that had signed on to the UEP Certified campaign: . . . Rose Acre Farms (certification no. 198) . . . .

. . . .

234. UEP has been attempting to conspire with its members and other non-members to restrict egg supply and artificially fix prices since its inception. . . .

. . . .

**D.      UEP's Animal Husbandry Guidelines Are a Pretext For a Naked Price-Fixing Scheme**

322. The UEP and co-conspirators' supply control campaign starts with the fee-based "UEP Certified" logo and misleadingly termed "animal husbandry guidelines."  UEP created the UEP Certified program as a front and pretext for a naked price fixing agreement and an anticompetitive output restriction scheme. . . .

**1.      UEP Certification Program**

323. . . . UEP Certified companies [like Rose Acre] are permitted to **display the UEP Certified logo on their packaging and to market their eggs as** "United Egg Producers Certified." . . . All UEP Certified eggs must also be **marketed with the phrase "Produced in Compliance with the United Egg Producers'**

**Animal Husbandry Guidelines."**

. . . .

## INJURY TO PLAINTIFFS AND CLASS MEMBERS

407. As a direct and proximate result of the contract, combination and conspiracy alleged herein, Plaintiffs and other members of the classes were, and continue to be, damaged in their business or property in that they paid more for shell eggs and egg products during the Class Period than they would have paid in the absence of such contract, combination and conspiracy.

**(Exhibit "7"** ¶¶ 1, 2, 5, 24, 43, 45, 47, 91, 109, 110, 113, 114, 178, 184, 186, 213, 234, 322, 323, 407 (emphasis added))

35.     On February 27, 2009, the underlying indirect purchaser class plaintiffs filed a Consolidated Amended Class Action Complaint in the *Egg Products Antitrust Litigation* against Rose Acre and the other defendants. It is the operative complaint for the indirect purchasers, replacing the initially filed indirect purchaser complaints. A copy of the operative indirect purchaser complaint is attached as **Exhibit "8."** It alleges causes of action for: (1) Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; (2) violations of many different state antitrust laws; and (3) Unjust Enrichment.

36.     The indirect purchaser Consolidated Amended Class Action Complaint in the *Egg Products Antitrust Litigation* includes substantially the same allegations as the direct purchaser Consolidated Amended Class Action Complaint except that indirect purchasers are the plaintiffs in the former and direct purchasers in the latter. Additionally, the indirect purchaser complaint includes both state and federal antitrust causes of action, but the direct purchaser complaint only federal antitrust causes of action.

37.     Both complaints include essentially the same fact allegations, but the indirect purchaser Consolidated Amended Class Action Complaint provides some additional detail on the allegations in the *Egg Products Antitrust Litigation.* It includes the following additional allegations:

1. This antitrust action arises out of a long-running conspiracy extending from at least January 1, 2000 through the present (the "Class Period"), among Defendants and their co-conspirators, with the purpose and effect of fixing, raising, and maintaining prices, allocating market share, and restricting output of both shell eggs

and egg products sold indirectly to Plaintiffs and other indirect purchasers in the United States, including the Class Jurisdictions.

147. Plaintiffs allege...that certain shell egg and egg products processors engaged in cartel between themselves and non-cooperatives...entailing the (A) agreement to increase layer cage sizes under the pretext of animal husbandry standards...

...

168. Further, UEP and its co-conspirators monitored compliance with supply restraints, and ensured compliance by selectively enforcing certification requirements that reduce supply, and convincing purchasers to purchase only eggs that are "certified" and subject to the supply restriction conspiracy, even though such certification programs were pretexts for restrictions based on economic analyses rather than animal husbandry.

...

174. During the relevant time period, it is known that the largest shell egg and egg products processors entered into an agreement to increase cage sizes under the pretext of adopting animal husbandry standards in order to reduce total flock sizes with one of the intended goals being to reduce supply and increase prices...Examples of this cartel-like agreement are as follows:

...

b) During several industry conferences between October 2001 and mid 2002, United Egg Producers ("UEP) announced that its members (shell egg producers) should commit to satisfying chicken health and welfare guidelines (7 in total) on 100% of their egg production facilities. The focus was primarily related to increasing cage sizes while agreeing not to increase flock sizes. The UEP also disclosed that it wants facilities designed for breaking and egg products to follow the same guidelines. These efforts continued throughout the Class Period.

...

**185. Defendants'...falsely represented to Plaintiffs and members of the Class that the prices they paid for shell eggs were fair and competitive.**

**186. Defendants' false representations and public statements attributed price increases to normal market conditions and** factors other than their illegal conspiracy....

**187. Such explanations made by the Defendants' included assertions that they could not effectively respond to supply reductions as a result of limitations imposed by animal husbandry guidelines** that had the effect of reducing cumulative cage space, as well as their **attributing price increases to other external factors including** supply-side wear-and-tear, **the increased price of fuel and feed,** and the upward adjustment of other costs of production.

**(Exhibit "8" ¶¶** 1, 147, 168, 174, 185-187 (emphasis added))

**COMPLAINT**

## ROSE ACRE'S NOTICE TO DEFENDANTS AND THEIR DENIAL

38.     On October 9, 2008, Rose Acre's insurers received notice from Rose Acre (through CNA) of the following class action complaints that would become part of the *Egg Products Antitrust Litigation*: *T.K. Ribbing's Family Restaurant v. United Egg Producers, et al.*, United States District Court, Eastern District of Pennsylvania, No. 08-4653; *Bemus Point Inn, Inc. v. United Egg Producers, Inc., et al.*, United States District Court, Eastern District of Pennsylvania, No. 08-4750; *Nussbaum-SF, Inc. v. United Egg Producers, Inc., et al.*, United States District Court, Eastern District of Pennsylvania, No. 08-4819. Rose Acre requested a defense. The policies implicated by the notice included the 1999/2000 Transcontinental and 2000/2001 Columbia Casualty Policies.  Rose Acre thereafter continued to notify its insurers (also through CNA) of numerous additional subsequently filed class action complaints in which Rose Acre was named as a defendant – all of which were eventually included in the *Egg Products Antitrust Litigation*. Continental Casualty acknowledged that, on October 9, 2008, it received notice of the *T.K. Ribbing, Bemus Point Inn,* and *Nussbaum-SF* class action complaints. A copy of the letter is attached as **Exhibit "9."**

39.     By letter dated February 10, 2009, National Fire (through CNA) denied Rose Acre a defense under the 1999/2000 Transcontinental Policy. A copy of the letter is attached as **Exhibit "10."** In the denial letter, National Fire claimed the allegations did not fall within the insuring agreement of the Policy.  It only cited one exclusion which does not even apply to "personal and advertising injury" coverage. The letter states in pertinent part, at page 6:

> It is National's position that coverage does not exist for these suits, as the allegations of the suit regarding statutory violation, conspiracy, combination, and unfair competition do not constitute an "occurrence," as they indicate intent and are not fortuitous in nature.  In addition, the allegations do not fit within the definitions of "bodily injury" or "property damage," as set forth in the policy. Nor do the allegations fit within any of the enumerated "personal and advertising injury" offenses set forth in the policy.  We further note that coverage would not be available to the extent that the allegations implicate exclusion a., "expected or intended injury," as set forth above.

**(Exhibit "10," p. 6)**

40.     On May 18, 2009, Rose Acre gave further notice of the *Egg Products Antitrust Litigation* to its insurers under the Transcontinental and Columbia Casualty Policies, and again requested a defense in that matter.  The notice included a copy of the direct purchaser Consolidated Amended Class Action Complaint filed January 30, 2009 and the indirect purchaser Consolidated Amended Class Action Complaint filed February 27, 2009 in the *Egg Products Antitrust Litigation*.

41.     By letter dated July 22, 2009, National Fire acknowledged that it is the successor to Transcontinental.  National Fire (as Transcontinental's successor) and Columbia Casualty again denied Rose Acre a defense of the *Egg Products Antitrust Litigation*, this time under both the 1999/2000 Transcontinental Policy and the 2000/2001 Columbia Casualty Policy.  A copy of the letter is attached as **Exhibit "11."**

42.     After acknowledging that the individual antitrust complaints had been consolidated into amended class action complaints in the multi-district *Egg Products Antitrust Litigation*, National Fire and Columbia Casualty took the same coverage position as the earlier denial letter.  The July 22, 2009 letter states in pertinent part:

> It is National's [and Columbia Casualty's] position that coverage does not exist for these suits, as the allegations of the suit regarding statutory violation, conspiracy, combination, and unfair competition do not constitute an "occurrence," as they indicate intent and are not fortuitous in nature.  In addition, the allegations do not fit within the definitions of "bodily injury" or "property damage," as set forth in the policy.  Nor do the allegations fit within any of the enumerated "personal and advertising injury" offenses set forth in the policy.  We further note that coverage would not be available to the extent that the allegations implicate exclusion a., "expected or intended injury," as set forth above.

**(Exhibit "11,"** p. 8)

43.     The Defendants have refused and continue to refuse to reimburse Rose Acre for expenses despite their obligation to do so.  Because of the Defendants' failure to defend, Rose Acre has incurred expenses defending itself in the *Egg Products Antitrust Litigation* and in securing counsel to enforce its rights under the insurance Policies.

**COMPLAINT**

## THE UNDERLYING CLAIMANTS ALLEGE "PERSONAL AND ADVERTISING INJURY" NOT EXCLUDED BY THE POLICIES REQUIRING THE DEFENDANTS TO DEFEND THE *EGG PRODUCTS ANTITRUST LITIGATION*

44. The Policies require the Defendants to defend suits alleging "personal and advertising injury." The *Egg Products Antitrust Litigation* alleges facts constituting "the use of another's advertising idea in [Rose Acre's] 'advertisement,' " a "personal and advertising injury" offense under the Policies. The Defendants thus had and have an obligation under the Policies to defend Rose Acre in the *Egg Products Antitrust Litigation*.

45. For example, Rose Acre's alleged conduct referenced in the *Egg Products Antitrust Litigation* Consolidated Amended Class Action Complaints, including at ¶¶ 1, 2, 5, 24, 43, 45, 47, 91, 109, 110, 113, 114, 178, 184, 186, 213, 322, 323, 407 of the direct purchaser complaint, constitutes the use of another's advertising idea in Rose Acre's advertisement. According to the claimants, Rose Acre used ideas that its co-defendants already had used to retain its customers and sell its egg products despite rising prices: (1) the prices customers paid for its eggs were "fair and competitive;" and (2) price increases were based on "circumstances beyond [Rose Acre's] control," such as rising feed costs and implementing the UEP certified program addressing animal husbandry concerns. The class claimants specifically alleged that Rose Acre "marketed" these false ideas and included them in public statements to its customers, i.e., in press releases, trade publications, newspapers and other advertising, thus making them advertising ideas that it used in its advertisement.

46. No Policy exclusions bar a defense. The Defendants did not rely on any exclusion pertinent to the Policies' "personal and advertising injury" coverage when they denied a defense. They are estopped from asserting them.

### FIRST CAUSE OF ACTION
#### Declaratory Relief – Duty to Defend

47. Rose Acre, by this reference, incorporates each and every allegation set forth in the above paragraphs of this Complaint as though fully alleged herein.

COMPLAINT

48.     By issuing and delivering the Policies, Columbia Casualty and Transcontinental agreed to provide a defense for suits seeking damages for "personal and advertising injury" offenses as defined in their Policies.

49.     National Fire assumed Transcontinental's obligations under the 1999/2000 Policy.

50.     The Defendants are obligated under the Policies to pay attorneys' fees and costs incurred in the defense of the *Egg Products Antitrust Litigation*. The Defendants breached their duty to Rose Acre by failing to provide a defense in the *Egg Products Antitrust Litigation*.

51.     Rose Acre has fully performed all of the obligations and conditions to be performed by it under the Policies and/or has been excused from performing same as a result of the Defendants' breach of their duty to defend.

52.     An actual bona fide controversy exists between Rose Acre, on the one hand, and the Defendants, on the other hand, that requires judicial declaration by this Court of the parties' rights and duties. Namely, the parties disagree about whether the Defendants have a duty to defend Rose Acre in the *Egg Products Antitrust Litigation* and to pay all of the attorneys' fees and costs it has incurred and will incur to defend that litigation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Rose Acre prays for judgment against Defendants Columbia Casualty and National Fire as follows:

1.     That the Court issue judgment declaring Columbia Casualty has and had a duty to defend Rose Acre under the Policy it issued to Rose Acre against the claims asserted in the *Egg Products Antitrust Litigation*;

2.     That the Court issue judgment declaring National Fire has and had a duty to defend Rose Acre under the Policy Transcontinental issued to Rose Acre against the claims asserted in the *Egg Products Antitrust Litigation*;

3.     That the Court issue judgment declaring Columbia Casualty must promptly pay to Rose Acre all attorneys' fees and costs incurred by Rose Acre in defense of the claims asserted

in the *Egg Products Antitrust Litigation*, along with pre-judgment interest accruing thereon from the date of each invoice at the legal rate, as well as future fees and costs;

4.      That the Court issue judgment declaring National Fire must promptly pay to Rose Acre all attorneys' fees and costs incurred by Rose Acre in defense of the claims asserted in the *Egg Products Antitrust Litigation*, along with pre-judgment interest accruing thereon from the date of each invoice at the legal rate, as well as future fees and costs;

5.      For total costs of the suit herein; and

6.      For such other and further relief as the Court may deem just and proper.

Dated:  October 15 , 2009

PLEWS, SHADLEY, RACHER &
BRAUN LLP

By: _____
       Jeffrey D. Featherstun (17035 49)
       1346 N. Delaware Street
       Indianapolis, Indiana 46202
       Telephone:  (317) 637-0700
       Facsimile:  (317) 637-0710
       jfeatherstun@psrb.com


GAUNTLETT & ASSOCIATES
David A. Gauntlett (*Pro Hac Vice Pending*)
Brian S. Edwards (*Pro Hac Vice Pending*)
18400 Von Karman, Suite 300
Irvine, California 92612
Telephone: (949) 553-1010
Facsimile:  (949) 553-2050
info@gauntlettlaw.com
bse@gauntlettlaw.com

Attorneys for Plaintiff
Rose Acre Farms, Inc.

**COMPLAINT**

## EXHIBITS TO COMPLAINT

| 1. | Transcontinental Insurance Company insurance policy no. 157341892 issued to Rose Acre Farms, Inc., effective March 1, 1999 through March 1, 2000 |
|---|---|
| 2. | Columbia Casualty insurance policy no. 0157341892 (renewal) issued to Rose Acre Farms, Inc., effective March 1, 2000 through March 1, 2001 |
| 3. | CNA's September 2007 SEC Form 10-Q |
| 4. | Washington State Insurance Commissioner's 2007 Annual Report, Appendix G |
| 5. | Complaint in the *John A. Lisciandro dba Lisciandro's Restaurant v. United Egg Producers, et al.* action, filed in 2008, now consolidated into the *Egg Products Antitrust Litigation* |
| 6. | Joint Status Report in the *Egg Products Antitrust Litigation*, dated May 4, 2009 |
| 7. | Consolidated Amended Class Action Complaint in the *Egg Products Antitrust Litigation* filed by underlying direct purchaser class plaintiffs on January 30, 2009 |
| 8. | Consolidated Amended Class Action Complaint in the *Egg Products Antitrust Litigation* filed by underlying indirect purchaser class plaintiffs on February 27, 2009 |
| 9. | Continental Casualty's November 13, 2008 letter acknowledging receipt of notice of the *T.K. Ribbing*, *Bemus Point Inn*, and *Nussbaum-SF* class action complaints |
| 10. | National Fire's denial letter dated February 10, 2009 |
| 11. | Columbia Casualty's and National Fire's denial letter dated July 22, 2009 |

COMPLAINT